## Case No. 12,948a.

### SLOAT v. SPRING et al.[1]

Circuit Court, E. D. Pennsylvania. April 23, 1850.

PATENTABLE INVENTION—COMBINATIONS—ANTICIPATION—UNSUCCESSFUL EXPERIMENTS—ORIGINAL AND REISSUE PATENTS AS EVIDENCE—VALIDITY OF REISSUE—INFRINGEMENT, WHAT CONSTITUTES—MECHANICAL EQUIVALENTS.

[1. It is when speculation is reduced to practice, when experiments have resulted in a contrivance or machine, new and useful, not previously known or used by others, that the discovery or invention is entitled to a patent.]

[2. If experiments made are unsuccessful and useless, and are abandoned, and not followed up by a successful machine, until a successful machine has been made and patented by another, then the right of the latter to his patent is not affected by such prior experiments.]

[3. A patent is prima facie evidence that the patentee was the first and original inventor of the improvements described in the specifications; and a reissue patent granted under authority of the act of 1836 is prima facie evidence that the machine described in the specifications thereof is substantially the same as the machine intended to be patented by the original patent.]

[4. The drawings are a part of the description of the thing patented, and are to be considered in connection with the specifications.]

[5. Although the various combinations and mechanical means and instruments of which a machine is composed have been previously invented or described, a part in one improvement and a part in another, yet the contriver of that machine is the original and first inventor, if he was the first to discover the mode of combining these different inventions and instruments together in one organized machine adapted to the purposes mentioned in his patent.]

[Cited in brief in Pitts v. Edmonds, Case No. 11,191.]

[6. The fact that one who claims to be the first and original inventor of a machine has taken into partnership with himself the assignees of another, who also claimed to be the original inventor, instead of litigating with them the question of priority, is not to be regarded as an admission by the former patentee of the validity of the patent obtained by the latter, if the arrangement was induced either directly or indirectly by fraud or misrepresentation.]

[7. The power to grant an amended patent under the statute (Act July 4, 1836, § 13; 5 Stat. 122) is given to the commissioner only where there is an error in the patent which arose through inadvertency, accident, or mistake, without any fraudulent or deceptive intention; and of this the commissioner must be the judge, and his judgment is generally considered as conclusive on that point.]

[8. A renewed patent issued under this provision must be for the same invention or machine as that described in the original patent, and not for a different machine; but the description or specifications of the renewed patent will necessarily be different from that of the original, as the renewal is granted only upon the ground that the other was defective and insufficient.]

[9. Neither the substitution, in a reissued patent, of one known mechanical equivalent for another, nor the more perfect adjustment of the different parts of the same combination, will make the specifications substantially different so as to invalidate the reissue, provided that there is not included therein any new discoveries, inventions, or improvements, capable of being patented as such.]

[10. Infringement involves substantial identity. A machine is an infringement if it incorporates in its structure and operation the substance of the invention; that is, by an arrangement of mechanism which performs the same service, or produces the same effect in the same way, or substantially in the same way. Merely colorable alterations or evasions, by substituting one mechanical equivalent for another, do not avoid infringement.]

[Cited in brief in Pitts v. Edmonds, Case No. 11,191.]

[11. If a change, made by an alleged infringer, is the substitution of a mechanical equivalent, and besides this accomplishes some other advantage beyond the effect or purpose accomplished by the patentee, then there is an infringement as respects what is covered by the patent, although the further advantage may be patentable as an improvement on the former invention.]

[This was a bill in equity by George H. Sloat against Charles A. Spring, Peter Boon, and David R. Garrison for infringement of a patent. The cause was tried before a jury upon issues prepared and sent out of the chancery court.]

St. Geo. T. Campbell and Charles M. Keller, for plaintiff.

Henry J. Williams and Theodore Cuyler, for defendants.

GRIER, Circuit Justice (charging jury). I congratulate you that we have at last got so near what I hope is the end of our labors in this case. You have observed that this is not the usual common law action brought for the infringement of a patent right, in which, if the plaintiff is successful, the jury assess damages, and render a verdict which

---

is the foundation of a judgment at law. But this case had its origin on the equity—the chancery—side of this court. The plaintiff, in his bill, prayed for an injunction against the use of a certain machine in the possession of the defendants, which he alleged was an infringement of the patent to Woodworth, of which plaintiff was the assignee. The defendants, in their answer, denied—First. That Woodworth was the original inventor of the machine patented by him in December, 1828. Second. They alleged that the patent re-issued in July, 1845, is not for the same invention intended to be patented by the first patent of 1828. And thirdly. That admitting the validity of the plaintiff's patent, the machine invented and used by the defendants did not infringe upon it.

As the questions in issue on the equity side of the court were all matters of fact, affirmed by one party and denied by the other, which would probably be the subject of much contradictory testimony of facts, and conflicting opinions on questions of mechanics, we thought it best to have them tried by a jury—the proper tribunal for trying questions of fact—when the witnesses and the machines themselves can be brought into court, where the one may be subject to careful inspection, and the other to rigid cross-examination; the only sure method of eliciting the truth in such cases as the present. Courts of chancery examine all questions by depositions, not by witnesses, and in depositions every man may be just six feet long, and you cannot compare them. It will be your duty, therefore, gentlemen, to carefully examine and weigh the testimony which has been laid before you, on each of the three several points stated, and according as you find the truth to be, to return an affirmative or a negative answer to the three following propositions. You will observe that they are stated in the interrogative form; your verdict will be made by changing them into the affirmative or negative form.

The first is—Was Wm. Woodworth the original inventor of the machine patented by him, December 27th, 1828? Your answer will be, either he was the original inventor or he was not. The second—Is the re-issued patent of July, 1845, for the same invention, intended to have been patented by the patent of December 27th, 1828? Your answer will be either that the patent of July was for the same invention as that of 1828, or it was not. So with the third—Does the machine of the defendants infringe upon the said amended patent of July, 1845? Your answer will be either that it is or it is not. So that you are not to be troubled with any other extraneous questions; they will be settled when we get your answers to these.

The first point for your consideration is, was Wm. Woodworth the original inventor of the machine patented by him, December 27th, 1828? Now without pretending to sum up the whole evidence on any one of these points—a thing that has been done with great ability by the learned counsel on both sides, I must confess, with uncommon ability—it will be necessary for the court only to make a few remarks on the points of law that bear on each of these points, and especially on those which the counsel have requested us to instruct you. To entitle a man to a patent, the law requires that a machine must be new and useful. You will observe that this first question admits the machine to be useful; it does not question that; it only denies its novelty so far as Woodworth is concerned in it. Was Woodworth the first inventor of this machine for planing, tonguing and grooving boards at one operation? "The intellectual production, or that which, when perfected, constitutes the thing invented, differing from all other things by some substantial peculiarity, which gives it a distinct character, is what the law means to protect with an exclusive privilege." That is what is meant by an invention. It is usually the case, when any valuable discovery is made, or any new machine of great utility has been invented, that the attention of the public has been turned to that subject previously; that many have been making researches and experiments. Philosophers and mechanicians may have in some measure anticipated, in their speculations, the possibility or probability of such discovery or invention; many experiments have been unsuccessfully tried, coming very near, yet falling short of the desired result. Yet all these speculations and experiments have produced nothing really beneficial. The invention, when perfected, may be truly said to be the culminating point of many experiments, not only by the inventor, but by many other persons. It is when speculation is reduced to practice, when experiments have resulted in a contrivance or machine, new and useful, not known or used by others before, that such discovery or invention is entitled to a patent. It has happened that adroit speculators may steal the inventions or discoveries of others, and be the first to obtain a patent. But it more generally happens that when an inventor has successfully produced a new and useful machine, that dozens of others rise up to claim a priority. Never has a useful invention been patented, that witnesses could not be found to swear that they had seen it in use many years before, either in New or Old England; and yet, strange to tell, the invention, though most valuable, has been left to drop into obscurity, both by the inventor and the public, burnt up, or had some other accident, so that neither the public nor the inventor received any advantage from it. Such testimony ought to be received with suspicion, as it carries improbability on its face. You will inquire,

then, whether any person had previously invented the machine patented by Woodworth in 1828, or whether he was the first inventor of that compound machine used for the planing of boards, for which he obtained a patent. The evidence on the affirmative of this question, is: First—the patent, which is prima facie evidence; it is founded on the oath of the applicant, and is sufficient until those alleging he is not the inventor prove the contrary. You know that is the meaning of prima facie evidence, sufficient to prove a fact until the contrary is proved; but it is liable to be rebutted. That is the difference between prima facie and conclusive evidence. Second—the testimony of witnesses that such a machine was not known before 1828, when Wm. Woodworth put it into successful operation at the dry dock in New York.

Has the force of this testimony been overcome by that offered by the defendants? They allege, First. That Woodworth is not the first inventor, nor entitled, as such, to a patent, because his machine had been described in a public work, anterior to his patent. Certain volumes of an English publication, called the Repertory of Arts, have been put in evidence to show that one Samuel Bentham had described such a machine in the specifications of certain patents granted to him as early as 1793, or before that time. And they have shown you a patent granted to one Bramah. It must strike you as strange, that if either Bentham or Bramah had invented a machine of such immense value, no person could be found who had ever seen it in operation. It is true, that if a machine substantially the same with that patented to Woodworth, in 1828, is described in books as long ago as 1793, the patent to Woodworth is void, and you should find this question in the negative. But I must say—although it is a question of fact for you—that I am unable to discover anything like the description of such a machine in those books. Second. A machine, said to have been used by one Judge, in 1822, at the navy yard in Washington, for grooving timber for the coffer dam, is alleged to be the same in substance with that now in controversy. Of this you will be the judge; the learned counsel did not seem to insist upon it much. I may say, I have not been able to discover that it contained any combination of machinery, by which a board or plank could be planed, tongued and grooved at the same time. Third. Then comes Robert Wollcott, who swears, that in 1822, he made the iron for a machine substantially the same with the present, which was erected and used in Baltimore. Is this true or false? The witness has stated circumstances which forbid the idea of a mere mistake as to date, and yet several witnesses have been brought to contradict him most directly as to many circumstances. If the shop or manufactory mentioned by Wollcott, be the same as that described by the other witnesses, his testimony must be a fabrication from beginning to end, though I must confess it was delivered with such an appearance of truth and circumstantial accuracy, that would, in most cases, demand our confidence in its truth. It will be for you to judge. In judging of it, you should look to probabilities. How does it come, if it is true this invention, so valuable, was made in 1822, no other man in Baltimore has lived to tell anything about it, or that the mere accident of the burning up of so valuable a machine would have caused it to be abandoned altogether? In connexion with this point, I may observe that the patent law requires that a person who claims a patent should have invented or discovered some useful art, manufacture, engine, machine or device, or an improvement therein not before known or used; and as a general rule the patent is void where the machine or device patented can be shown to have been before known or used. But it has been decided that in case of a lost art, (such as embalming, painting on glass and certain arts that the ancients had, which we have not,) where the previous inventor had never brought his invention into use, and the knowledge of it has become lost, a new inventor of the same thing may have a valid patent. Fourth. It is contended that Mr. Emmons was the first inventor of this machine. A patent to him for the same, dated April 25th, 1829,—a few months after that to Woodworth,—has been read in evidence. This patent, it is contended, describes the machine now before you, while that of Woodworth does not. It is alleged that he commenced his experiments in 1824—before Woodworth—at Syracuse, where he contrived a machine for jointing plank with a revolving cutter. It has been shown also, that Woodworth, instead of contending with Emmons, took his assignees into partnership, adopted his patent, and thereby admitted an equal, if not a better right, in Emmons, to the original invention of the machine. On the contrary, it is alleged, and testimony has been given to support the allegation: First, that Emmons had never invented anything but a machine called the "flim flam," which was wholly inoperative and worthless, and abandoned as such by him and the person for whom he constructed it; second, that the patent to Emmons was got up by certain speculators, (plain spoken people would call them swindlers,) not too good to commit a fraud, for the purpose of imposing upon Woodworth; that the specification was taken from Woodworth's machine, which was before their eyes in operation in New York, and that if it contains a better description of the machine, it is because rogues may be more skilful in drawing a specification than the honest inventor.

Of the truth of these allegations, on both sides, you must judge. One remark only I would venture to make. If Mr. Emmons,

after the rude and unsuccessful contrivance called the "flim flam," made in 1824, had proceeded to perfect the machine by after continued experiments, and really ever did devise and construct such a machine as is described in his specification, how does it come that not a single witness can be found to prove the fact, while so many persons survive who have seen his flim flam and Woodworth's machine? It will be proper here to notice the various instructions respectively requested on this point proposed for your investigation. The defendants' counsel request us to instruct you as follows: "That if the jury believe that Emmons experimented in 1824, and produced a machine which embodied the substantial principles of the Woodworth machine, and then, in 1829, perfected his invention by patenting a machine which is perfect and capable of use, and at the same time embodies the principle of the Woodworth machine in the same organized form, then he is the first inventor, and his patent will defeat that which was granted to Woodworth." This instruction, so far as it states the general principle, that if Emmons invented a machine, in 1824, substantially the same as that invented by Woodworth, in 1828, his patent gave him the better title, is undoubtedly true, as it is the date of the invention, not of the patent, which gives the prior and better right. But if the experiment of 1824 was unsuccessful and useless, as proved by the witnesses; if it was abandoned, and not followed up by success in making a machine which would plane, tongue and groove boards before Woodworth completed his invention successfully, then the patent of Emmons, if it embodies the principles of the Woodworth invention, is worthless and void; it was a mere attempt of certain men to get up a thing to defraud Woodworth. The plaintiff's counsel have also requested the following instructions on this point, which the court give, as requested: "First. The patent of 1828 is prima facie evidence that Wm. Woodworth is the first and original inventor of the improvement described in the specification; and the patent of 1845 is prima facie evidence that the machine described in the specification, is substantially the same with the one intended to be patented in 1828, and the burthen of proving the contrary is upon the defendants. Second. The drawings are a part of the description of the thing patented, and to be considered in connection with the specification. Third. If the jury find that, although all the various combinations and mechanical means and instruments of which this machine is composed, had been so previously invented or described, but that a part is in one improvement and a part in another, yet William Woodworth is the original inventor, if he was the first to discover the mode of combining these different inventions together in one organized machine, adapted to the purposes mentioned in his patent. Fourth. That a previous experiment, made and abandoned, and never rendered practically useful or operative, will not affect the validity of a patent subsequently obtained. Fifth. That if the arrangement made in November, 1829, between Emmons and Woodworth, was induced, directly or indirectly, by fraud or misrepresentation, it cannot be held or regarded as an admission by Woodworth, of the validity of the Emmons patent." I think it is unnecessary to make any further remarks on the Emmons patent, or on this first point.

The second point proposed for your consideration, is as follows: Is the re-issued patent of July 8th, 1845, for the same invention, intended to have been patented by the patent of December 27th, 1828? The authority under which this second patent of 1845 was issued on the surrender of the original, is to be found in the 13th section of the patent act of July 4th, 1836. It was new in our patent laws. Previously, if a man had drawn a patent and specification unskilfully, so as to include more than he intended, or did not describe what his invention consisted in, he forfeited all. By the act of 1836, the system was remodeled, and a more competent board appointed; previously, patents were generally issued to any man that asked for them, and allowed to run their risk in the courts. I will read the 13th section of the act. (Reads.) Observe, "for the same invention." Experience has shown that many persons have the talent to invent, who are not able sufficiently to describe their invention in a specification. Indeed, the ability to do this requires such a knowledge of the principles of mechanics, of previous inventions, and of legal principles, that few persons are competent to the task, although many put themselves forth to do it. It would be unjust that a meritorious inventor should lose the benefit of his invention, when by inadvertency, accident or mistake, he has been unable sufficiently to set forth, on his specification, the true nature and extent of his invention. It was to remedy this evil, that the 13th section of the act was devised and enacted. You will observe—First. That this power to grant an amended patent is given to the commissioner, only where the error has arisen through inadvertency, accident or mistake, without any fraudulent or deceptive intentions. Of this the commissioner must be the judge, and his judgment is generally considered conclusive on that point. Second. The commissioner is authorized to grant this amended patent only in two cases: (1) Where the patent is inoperative or invalid by reason of a defective or insufficient description or specification; or (2) by reason of the patentee claiming more than he had a right to claim as new. From this it follows—First, that the renewed patent must be for the same invention or machine as that described in the first patent,

and not for a different machine; second, that the description or specification in the one will necessarily be different from that in the other, as the first is defective and insufficient, and the second is not. Your inquiry will not be to take the two specifications and compare them together. That is not the thing. The court can do that. It is because the first specification has been ignorantly and mistakenly drawn, and insufficient, that a new one has been made to set forth the real principles in the machine. The only question is whether the invention, the machine described in the last patent, is the same intended to have been patented in the first. Your inquiry then on this point will be, "Was the invention or machine invented and intended to be described in the first specification that which is described in the last specification?" or does it describe a different combination of instruments and devices to plane, tongue, and groove boards? Does the amended specification and patent merely correct the defects and insufficiency of the first? or does it describe a new and different or improved machine, differing substantially from that described in the first? As you find these facts, your verdict will be the affirmative or negative of this proposition. If you find that Woodworth had actually invented a valuable machine for planing, tonguing, and grooving planks at one operation, it is but fair to presume that he intended to describe it in his patent if he could, and though that description may be defective or erroneous,—and if the amended patent correctly describes the machine he first had invented, if it describes the same combination of instruments to produce the same effect, then the case is within the province of this section of the act, and the patent of 1845 was properly issued. On the contrary, if the amended specification describes a machine substantially different from that invented in 1828,—a different combination of tools to produce the effect,—if it includes improvements and inventions of Woodworth or others, discovered or invented since 1828, the amended patent would not then be for the same machine or invention. If it is not substantially for the same invention or machine, your verdict should be in the negative. The question is not whether the specifications agree, as some seem to think, but whether the last patent is for the same combination of instruments, or the same machine originally invented by Wm. Woodworth, and intended to be patented by him for planing, tonguing, and grooving boards at one operation.

On this point the plaintiff's counsel requested the following instructions: "First. That a difference in the description in these two patents does not necessarily make them describe different inventions, as the inventor is authorized by law to correct, in the re-issued patent, the errors or deficiencies in the first, and make the second what he might have made the first; neither will the substitution of one known mechanical equivalent for another, nor the more perfect adjustment of the different parts of the same combination, or means, or instruments make the specification substantially different." The first proposition in this point is undoubtedly correct, and the second also, when construed with this proviso, that the amended patent does not include new discoveries, or inventions, or improvements, capable of being patented as such, which are not included in the first. "Second. That if the jury believe that the model produced from the Franklin Institute was made by Woodworth, as representing the machinery made by him prior to his application for a patent therefor, and was the invention intended to have been patented, and if they believe that substantially the same mechanical combination to produce the same results are described in the patent of 1845—that then said patent of 1845 is not invalid by reason of its containing a modification of the description in the patent of 1828." This instruction is given as requested.

The third and last point for your consideration is as follows: Does the machine of the defendants infringe upon the said amended patent of July 8th, 1845? An infringement of a patent takes place whenever a party avails himself of the invention of the patentee, without such variation as will constitute a new discovery. A man may improve a patented machine so as to entitle him to a patent for his improvement, but that will not give him a right to use the invention of the first patentee without his license. An infringement involves substantial identity, whether that identity be described by the terms "same principle," same "modus operandi," or any other. "A machine is an infringement of another if it incorporates in its structure and operation the substance of the invention: that is, by an arrangement of mechanism which performs the same service, or produces the same effect in the same way, or substantially in the same way." Mere colorable alterations, or adroit evasions by substituting one mechanical equivalent for another in the combination which constitutes the machine, should never be allowed to protect a party. But if the difference is not a difference of form, if there is a material alteration of structure, if there are substantially different combinations of mechanism to effect the same purpose by means which are really different, and not the same in substance, then the one will not be an infringement of the other. "The question whether one thing is a mechanical equivalent for another, is a question of fact depending on the testimony of experts, or an inspection of the machines, and it is an inference to be drawn from all circumstances of the case, by attending to the consideration whether the contrivance used by the defendants is used for the same purpose, performs the same duties, or is applicable to the same object as the contrivance used by the patentee. The question to be determined is, whether under a variation of form,

or by the use of a thing which bears a different name, the defendant accomplishes in his machine the same purpose, object, or effect as that accomplished by the patentee, or whether there is a real change of structure and purpose." If the change introduced by the defendants constitutes a mechanical equivalent in reference to the means used by the patentee, and if, besides being an equivalent, it accomplishes some other advantage beyond the effect or purpose accomplished by the patentee, it will be an infringement as respects what is covered by the patent, although the further advantage may be a patentable subject, as an improvement on the former invention. The defendants' patent of July, 1840, is "for an improvement in the arrangement of the pressure and feed rollers in planing machines." This patent is prima facie evidence that the defendants have made an improvement as regards pressure and feed rollers in planing machines. There is not the slightest evidence that it does not infringe on the Woodworth patent of 1845. It would seem rather to admit that it does use pressure rollers, if it patents an improvement on them.

We shall conclude by stating to you the different instructions requested by the counsel, affecting the question. The plaintiff's counsel pray the following: "First. That the claims in the patent of 1845, are set forth in plain, intelligible and unambiguous words." There is no doubt of that. "Second. That if the defendants employ in combination rotating planes and rollers, to prevent the board from being drawn up by the planes when cutting upwards, or from the planed to the unplaned surface, then they infringe on the first claim in the said patent, and the third issue must be found for the plaintiff." That is correct; you are so instructed. "Third. Or, if the defendants employ a combination of rotating planes with cutter wheels for tonguing and grooving, for the purpose of planing, tonguing and grooving at one operation, then they infringe the second claim of said patent, and the third issue must be found for the plaintiff." That is also correct. "Fourth. That if the rollers, used by the defendants in combination with rotating planes, do so operate 'as to prevent the boards from being drawn up by the planes when cutting upwards,' it is immaterial whether they also operate as feed rollers, and although used for such double purpose, they would infringe upon the plaintiff's patent, and the third issue must be found for the plaintiff." That is already stated as correct. "Fifth. That although the defendants may have invented a peculiar and improved device for feeding the plank or altering the position of the cylinder, such improvement will not justify them in using any of the combinations claimed in said patent of 1845." That is so instructed already. These instructions are given as requested. The defendants' counsel have also requested us to give you the following instructions: "First. That although modes or mechanical methods of giving effect to well

known material principles in machines are patentable; yet the principles themselves are not patentable." That is true. "Second. That the Woodworth machine is a combination of old and well known things for the production of a new result." That is correct. "Third. That said machine will not be infringed by a machine which combines one of its elements with a new, original and substantially different thing from the other elements of the Woodworth combination." That is perfectly correct. "Fourth. That a combination of old and well known things will not be secured by a patent which does not specifically describe that identical combination." That is also correct. "Fifth. That the sufficiency of the description in the specification, and the identity of the two machines described in the original and re-issued patents, are hereby questions of fact to be submitted to the jury." These instructions are also given as requested, except, as to the last, we would say the identity of two machines is a question of fact for the jury. The construction of a specification is for the court. But whether it describes a certain machine before the jury, is a question for them to determine.

To sum up the whole case in a few words and apply the abstract principles, we have stated, more immediately to the several points proposed for your investigation. On the 1st point: If you find from the evidence that Wm. Woodworth was the first to invent and perfect a machine, or combination of known instruments or devices for planing, tonguing and grooving boards at one operation, substantially such as is described or intended to be described in his patent of 1828, you should find this proposition in the affirmative, notwithstanding other persons may have made unsuccessful experiments, or come near it, or made contrivances something like it, which had been abandoned and never perfected or prosecuted to a successful result. On the contrary, if you find from the evidence that William Woodworth was not the person who first perfected such a machine, and brought it into successful operation, but that some other person had successfully perfected such a machine before Wm. Woodworth, you will find this proposition in the negative. In examining the second proposition, you will inquire, not whether the two specifications agree in their claims, for that is not the question; but you will inquire what was the machine invented by Wm. Woodworth, and which he intended to secure by his letters patent in 1828. If you find that this model from the Franklin Institute is a fair representation of it, (which is, I think, fully established by uncontradicted testimony,) you will take this patent of 1845 and compare the claims of it, as set forth in specification. You will find what combination of mechanical powers, instruments or devices is claimed as constituting the machine patented, as the principle or modus operandi of his invention; not merely whether the

mere details or accidents described in it as the best mode of building a machine are the same, or whether the form or propositions may differ, (one being horizontal and the other perpendicular,) or whether one well known mechanical equivalent or analogous device for effecting a particular purpose, is substituted for another; but you will examine what the party claims as the combination of instruments or devices which constitute his invention. First. Do you find in this model of the machine of 1828 "the employment of rotating planes" (I quote from the specification of 1845, claiming what is the invention) "substantially such as are described, in combination with rollers, or any analogous device to prevent the boards from being drawn up by the planes when cutting upwards, or from the reduced or planed to the unplaned surface?" Here they have defined their invention. Now do you find these things in that model? That is bringing the question down to the testimony. Second. Do you find in that model which we take as the representative of this invention, "the combination of rotating planes with the cutter wheels for tonguing and grooving for the purpose of tonguing and grooving boards at one operation?" That is the second claim. If you find that the machine invented in 1828 (or this model which represents it) contains this combination of mechanical tools, instruments or devices, forming a machine which will plane, tongue, and groove boards successfully at one operation, then you will find this second proposition in the affirmative. If, on the contrary, you find that the machine, described in the patent of 1845 (and represented by this mahogany model,) is a machine differing in principle or mode of operation from the other, (and not merely in its mode, form, or accident,) if the combination of instruments and devices be not the same in substance as in the first, if it is a different machine or invention, not producing the same effect, substantially in the same way, you will find the proposition in the negative. Third, and lastly. You will compare the defendants' machine with the claims in the specification of 1845. First—Has it "the employment of rotating planes with rollers, or any analogous device, to prevent a board from being drawn up by the planes when cutting upwards, from the reduced or planed to the unplaned surface"? That is what is claimed in the patent of 1845. If that is to be found in the defendants' machine you will find this proposition in the affirmative, that it is an infringement. Second—Or, if you should not find the first, if you find in the defendants' machine rotating planes, with the cutter wheels for tonguing and grooving, for the purpose of planing, tonguing and grooving boards at one operation, you will find this proposition in the affirmative. Third—Or, if you find in the defendants' machine either the tonguing or grooving cutter wheels, combined with pressure rollers to keep the board

steady, and prevent the cutters from drawing the boards towards the centre of the cutter wheels, whilst it is moved by the machinery, you will find this issue in the affirmative. If you find any one of these three points, you will find the issue in the affirmative, that it is an infringement. And in considering these points, it will not be material that the rollers may perform another function, or may be improved so that the improvement itself may be patentable, provided that they operate to prevent the board from being drawn up by the cutters. And I may here observe, also, that if the machine of the defendants operates as described in their own specification, it is a palpable infringement of the patent of 1845. You have seen the machine —I have not—and you can say whether it operates as the defendants have themselves described in their specifications. If, on the contrary, you find that the defendants' machine, first, uses rotating planes alone, not in combination with rollers or other analogous device, (such as straight edge or the like,) to prevent the board from being drawn up to the plane when cutting upwards; and if you find, second, that the defendants do not combine rotating planes with cutter wheels for tonguing and grooving, for the purpose of planing, tonguing, and grooving boards at one operation; and, third, that they do not use either the tonguing or grooving cutter wheels for tonguing and grooving boards, in combination with pressure rollers,—you will return a negative answer to these propositions.

To conclude, gentlemen: You will give an affirmative or negative answer to each of these several questions proposed for your investigation, according as you shall find the truth to be, as shown by the evidence before you, and in accordance with the principles of law which we have stated to you as plainly as we can, without any regard to notions or opinions entertained by yourselves or others, as to the propriety or justice of the act of congress extending this patent—the relative situation of the parties—the particular hardship of the result of the case, or any other consideration, save the truth of your answers to the several propositions submitted to your consideration. Suffer me to remark that it is of great importance, not only to the parties, but to the public, that you should agree on a verdict, and that all this labor and time of the court, and expense to the government and the parties, should not be lost. Jurors can generally agree when each brings an unprejudiced mind to the examination, seeking only for truth, and not stubbornly advocating a preconceived or hasty notion, taken up without sufficient examination. You will have sufficient time for this, as the court will be in session probably for a month to come. If you should agree after the court has adjourned, you can seal up your verdict and separate.

Verdict for plaintiff.

[For other cases involving this patent, see Cases Nos. 1,389, 1,944, 1,953, 5,402, 9,884, 10,480, 11,191, 12,947, 12,948, 13,078, 17,214, 17,786, 17,787.]